## J. D. FARASEY MFG. CO. v BYERLYTE CORPORATION

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17768. Decided Nov. 11, 1940.

T. A. Ryan, Esq., Cleveland, for plaintiff-appellant.

H. H. Felsman, Esq., Cleveland, for defendant-appellee.

## OPINION

By MORGAN, J.

The plaintiff brought this action against the defendant to recover the price of a second-hand pug mill sold and delivered to the defendant by the plaintiff. The defense was a breach of warranty in that the pug mill failed to handle batches of material of one thousand pounds each as guaranteed by the plaintiff. A jury was waived and the trial court found for the defendant.

The evidence discloses that in the summer of 1937, Samuel I. Rose, accompanied by Dennis Murray, an employee of the defendant, went to the plaintiff's plant and there were shown by Frank Murray, plaintiff's employee, a second-hand pug mill which was purchased for $325.00. The machine was heated by steam through steam jackets outside the mixer. The defendant instructed the plaintiff to cut off the steam jackets and to replace them by electric heating units. This the plaintiff did and charged for these and other changes $133.00, making a bill of $458.00 in all. Mr. Rose testified at the trial that Frank Murray guaranteed that the mill had a capacity of at least one thousand pounds and that it would pull a thousand pound batch. The record is not clear whether the warranty, according to Mr. Rose, covered the pug mill as it was when purchased or was to include the mill after all of the changes had been made as requested by the defendant.

Frank Murray testified that he did not warrant the pug mill as claimed by the defendant, but he admitted that it was sold to the defendant as a thousand pound mill and he claimed that the mill, if properly operated, would handle batches of one thousand pounds each. The pug mill was delivered to the

defendant in Cleveland on September 14, 1937, and was then shipped by the defendant to Washington, D. C., where the defendant had a contract to lay asphalt in a public project. The mill was set up by Dennis Murray with the assistance of William Gregory, also an employee of the defendant. Dennis Murray died before this action was filed but Gregory testified for the defendant at the trial.

Mr. Gregory testified that he first attempted to mix a five-hundred pound batch without success. The motive power was by an electic motor and the machine was belt-driven. The electric motor was furnished by the defendant. A smaller motor was replaced by a fifty horse-power motor and the machine then handled a five-hundred pound batch successfully. An attempt was then made to mix a batch containing a little over one thousand pounds and Mr. Gregory testified that the "motor continued to turn and then it would throw the belt off" and that for this reason the defendant was unable to mix batches of substantially one thousand pounds.

Each batch was composed of a mixture of stone, asphalt and tar which was first heated to a temperature of 375 degrees in a heater and then was placed in the pug mill where the temperature was to be not less than 225 degrees when mixing of the batch was completed.

Mr. Rose testified for the defendant that Dennis Murray who was its Superintendent in Washington, was not "familiar with the operation of pug mills". His explanation was that "we didn't mix with a pug mill previously, that is why he, (Dennis Murray) wasn't familiar with pug mills".

As to Gregory's knowledge of a pug mill, the defendant was asked by the trial court whether or not he had anybody at the trial "who is practical". The reply was in the negative, and the defendant stated, "Mr. Gregory is a mill-wright, but I don't think he has any knowledge about this." Mr. Gregory testified that he did not know a whole lot about machinery as he did not pretend to be a machinist. He was asked whether or not he had ever worked with a pug mill before and he answered that this was the first pug mill that he had ever worked. He testified that the pug mill was in Washington about one month, after which, on orders of the defendant, it was returned to Cleveland.

During the time the machine was attempted to be operated in Washington, no notice was given to the plaintiff that the defendant claimed a breach of warranty. After the pug mill was returned to Cleveland, the defendant made such a claim and offered to return the mill to the plaintiff, which offer was refused.

The Sales Act, §8429 GC, provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor."

One of the questions in the case is whether or not the notice of the buyer of the alleged breach of warranty was given "within a reasonable time". Was it a reasonable requirement that the plaintiff should have been notified promptly of the failure of the mixer to work batches of one thousand pounds each so that the plaintiff might have had a chance to examine the machine after it had been set up and to determine whether or not the machine had been set up or was being operated properly.

The defendant offered no evidence showing any defect in the pug mill itself. It rested its case for a breach of warranty on the evidence of Mr. Gregory who had never operated or set up a pug mill, that defendant's motor would not turn the machine and that the belt came off when the attempt was

made to operate the machine. Mr. Gregory also testified that one reason for the failure of the pug mill to work was that "it was just clamped down with two bolts". Also that, "if it had a key seat into it and a key into it it wouldn't have done that". When asked why he "hadn't put a key in it" Gregory answered, "I wasn't supposed to put a key in it, was I?"

We have so far dealt with the evidence as to breach of warranty in this case to throw light on an important ruling of the court in rejecting evidence offered by the plaintiff.

After the pug mill had been returned to Cleveland and the plaintiff had been notified that it would not work a thousand pound batch and that the mill was being held by defendant subject to the plaintiff's order, Mr. Frank Murray, representing the plaintiff, had an interview with Mr. Rose representing the defendant. As to this conversation held in November, 1937, the record shows the following on Mr. Rose's direct examination.

"Q. And tell the court what was said * * *.
A. Mr. Frank Murray asked us to take this machine, deliver it to some point in town and put it under power and use the machine at this plant. I consulted Mr. Myers in this matter and Mr. Myers refused to—
Mr. Ryan: I object.
The Court: Sustained."

Mr. Rose's examination then continued on other matters.

Col. Ryan. representing the plaintiff, did not object to the question. He did not object to the answer until Mr. Rose stated that "Mr. Myers refused to * * *" thus indicating clearly that Col. Ryan was objecting to having Mr. Rose testify to what Mr. Myers may have said to him. No motion was made to strike out the evidence already given and the record stands that Mr. Rose was permitted to testify to what Mr. Frank Murray said to him about putting the machine to a test.

Frank Murray was put on the stand by the defendant and he was asked to relate his conversation with Mr. Rose. Mr. Felsman, representing the defendant, objected as follows:

"Mr. Felsman: Your Honor, I object to that; I attempted to go into that myself.
The Court: Objection sustained.
Q. What was said; not a conclusion; what was said by you and what was said by him?
A. I said that I would set—
Mr. Felsman: Now, Your Honor, I object.
The Court: Objection sustained. There is nothing in the law, Mr. Ryan, that compels a purchaser to agree to a test. * * *."

There was a further colloquy between counsel and the court and Mr. Felsman again stated:

"I just want to invite the court's attention to the fact that I attempted to show this conversation on direct examination and it was objected to by counsel."

It is thus seen that the principal objection of defendant's counsel to the introduction of evidence as to this conversation was the refusal to permit him on direct examination of Mr. Rose to show this conversation. However, as already stated, the objection made by plaintiff's counsel was only to Mr. Rose testifying to a conversation with Mr. Myers, the president of the defendant company.

As the record stands, therefore, plaintiff was permitted to state some of this conversation and the defendant was denied the right to give its version of the talk between Mr. Rose and Frank Murray.

Furthermore, we do not believe that the reason given by the court for sustaining the objection made by defendant's counsel is well taken. It may very well be that the defendant was not required to submit the pug mill to a test. Nevertheless, the conversation of the parties as to testing the pug mill might have borne directly on the question whether or not there had

been a breach of warranty in this case, and it is our opinion that considering the record as a whole it was prejudicial error to deny the right to the plaintiff to give Mr. Murray's version of the conversation.

The statement of facts given above shows that the question whether or not there was a breach of warranty in this case is such a question that the court should have had all of the light that could have been cast upon the matter by competent evidence. The conversation between Frank Murray and Mr. Rose following the return of the pug mill to Cleveland was important in this case. A part of the conversation having been given by Mr. Rose and not struck from the record, Mr. Frank Murray, for plaintiff, should have been permitted to state the same conversation.

For the reasons herein stated, this case is reversed and remanded to the Common Pleas Court for a new trial.

Exceptions may be noted.

TERRELL, PJ. & LIEGHLEY, J., concur.